Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Kevin M. Pasquinelli, Esq. (Cal. Bar No. 246985)
Jing H. Cherng (Cal. Bar No. 265017)
Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:    (408) 998-1473
Email: kspelman@mount.com, kpasquinelli@mount.com,
    gcherng@mount.com

Counsel for Plaintiff Cyber Switching

United States District Court
Northern District of California

| | |
|---|---|
| Cyber Switching Patents, LLC d/b/a Cyber Switching<br><br>　　　　Plaintiff,<br>vs.<br>Methode Electronics, Inc.,<br>　　　　Defendant | Case No. tbd<br><br>**Complaint for Patent Infringement**<br><br>**Jury Trial Demanded** |

# COMPLAINT

Plaintiff Cyber Switching Patents, LLC d/b/a Cyber Switching ("Cyber Switching") files its Complaint against Defendant showing this Court as follows:

## Nature of the Action

1. This is an action for patent infringement, arising out of Defendant's infringement of U.S. Pat. No. 7,550,870 issued on June 23rd, 2009, and entitled *Method and Apparatus for Remote Power Management and Monitoring* (the "'870 Patent"), U.S. Pat. No. 7,630,186 issued on December 8th, 2009, and entitled *Current Protection Apparatus and Method* (the "'186 Patent"), and U.S. Pat. No. 7,672,104 entitled *Current Protection Apparatus and Method* (the "'104" Patent"). Copies of the '870 Patent, '186 Patent, and '104 Patent are attached hereto as Exhibits A, B, and C respectively. Collectively the '870 Patent, '186 Patent, and '104 Patent are referred to as the "Patents in suit".

## The Parties

2. Plaintiff is a Limited Liability Company, organized and existing under the laws of the State of California, with its principal place of business in San Jose, California.

3. Upon information and belief Defendant Methode Electronics, Inc. ("Methode"), is a corporation organized and existing under the laws of the State of Delaware. Methode's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE. Upon information and belief Methode does business in the State of California by, running operations in San Jose, California, among other things, developing, manufacturing, and offering for sale and selling the Methode Products, as defined below, within the State of California, and within this district.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, (federal question), and 1338 (patents).

5. This Court has personal jurisdiction over the Defendants by virtue of these companies' developing, offering for sale and selling their respective "Products", defined below, within the State of California and, upon information and belief, by these companies deriving significant revenue from such sales.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1400 (Patents).

### Intradistrict Assignment

7. This case is appropriate for district-wide assignment under Civil Local Rule 3-2(c). Assignment to the San Jose Division is appropriate because a substantial part of the events that give rise to the claims asserted in this complaint occurred in Santa Clara County.

### Operative Facts

### Charles H. Reynolds and Cyber Switching: First to Offer Intelligent Power Distribution Units to Data Centers

8. Charles H. Reynolds, the founder and owner of Cyber Switching---and inventor of the Patents in Suit--began pioneering power distribution technologies into data centers[1] as early as 1994. Over time he intimately understood the evolving trends of data center operations. Data centers rose to prominence during the dot com boom of the 1990's. Companies needed fast network connectivity and nonstop operation to deploy systems and establish an Internet presence. New technologies and practices were designed to handle the operational requirements of such large-scale operations.

9. Data center computing racks are fed power through power distribution units ("PDU"). PDU's are similar to, but much more sophisticated than, the retail "power strip" that one commonly uses at their desk. The most basic PDU provides standard electrical power to computing devices, but has no monitoring or remote access capabilities. For large data centers this basic functionality is

---

[1] A data center is a facility used to house computer systems and associated components, such as telecommunications equipment, storage systems, routers, and switches. It generally includes redundant or backup power supplies, redundant data communications connections, environmental controls (e.g., air conditioning, fire suppression) and various security devices. Large data centers are industrial scale operations using as much electricity as a small town.

insufficient, as they are inefficient, unable to monitor power, and have no ability to report or resolve power problems, if discovered.

10. As data centers grew in size, so did their energy costs and overhead cost of administration. Based on these fundamental ideas of increasing data center energy efficiency and lower costs of management through remote administration, Cybererswitching was formed. About this time Mr. Reynolds developed and sold the first Intelligent PDU ("iPDU") to address these issues. Cyber Switching iPDU's were marked with the patents and pending patent application numbers.

11. Smart PDUs, also known as intelligent PDUs ("iPDUs"), address these deficiencies. For example, intelligent PDUs (1) identify high power consuming equipment, (2) issue alarms when power overloading occurs or may occur, (3) identify erratic power consumption, and (4) monitor power usage against existing capacity. Cyber Switching began selling these multiple lines of iPDU related products including the ePower family, Dualcom PLUS intelligent Power Management systems, CS Series, E Series, Galaxy Series, Enterprise Management Console Software, PM8 Series, EFX Series Power Management Module, M series, and the PS Series.

12. iPDUs are able to add this additional value over standard PDUs by adding a number of features. iPDUs typically include a built in display for local reporting, as well as web connectivity for remote status reporting. iPDUs also include remote monitoring and management of individual power outlets, and devices, via standard network connectivity. Many iPDUs also include the ability to trigger alerts using standard email protocols or via Simple Network Management Protocol Management Information Bases ('SNMP MIBs").   Many iPDUs also allow for active control of electronics, for example, rebooting a computing server remotely. The iPDU is an essential element which gives Information Technology ("IT") Administrators the ability to adjust and monitor power demands from offsite locations. Below, are pictures of Cyber Switching products.

Mount, Spelman & Fingerman, p.c.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose, California 95110-2740
Telephone (408) 279-7000





13. As the data center power distribution market matured, large power companies, and smaller competitors, entered the market, directly competing with Cyber Switching, and practicing its patented inventions.

### The Patents in Suit

14. Cyber Switching is the owner by assignment of all rights, title, and interest in the Patents-in-Suit.

15. The '870 Patent describes a novel invention relating to a method and apparatus for intelligent power supply devices and/or methods that can be used for power supply control and/or monitoring in various information and/or network appliances.

16. The '186 Patent and the '104 Patent generally describe inventions relating generally to a current protection apparatus and more particularly to a current protection apparatus including a programmable characteristic and current protection method.

MOUNT, SPELMAN & FINGERMAN, P.C.
RIVERPARK TOWER, SUITE 1650
333 WEST SAN CARLOS STREET
SAN JOSE, CALIFORNIA 95110-2740
TELEPHONE (408) 279-7000

## Causes of Action

## Methode Electronics

17. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained above.

18. Defendant Method, within the United States, manufactures, uses, offers for sale, or sells iPDU's, as defined by the Patents in Suit *supra*, including but not limited to the Methode PDU Family alone and in combination with associated hardware such as but not limited to power management meters, Local Talk Products and in combination with the appropriate proprietary software such as Methode's Power Talk software or standard software such as web browsers, email systems and SNMP/MIBs infringe all claims of the Patents in Suit directly or indirectly. A more detailed list of Methode products is attached as Exhibit D.

## Count One –

## Methode Infringement of the '870 Patent

19. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained above.

20. By reason of some or all of the foregoing, Defendant Methode has directly infringed all claims of the '870 Patent. Defendant Methode's direct infringement has been willful since at least the first shipment of the Cyber Switching products.

21. By reason of some or all of the foregoing, Defendant Methode has indirectly infringed all claims of the '870 Patent by inducing infringement and contributing to infringement. Defendant had knowledge of the '870 Patent since at least the first shipment of Cyber Switching products and intended to induce infringement of the Patent in others.  One or more of Defendant's Products are nonstaple items and have no substantial non-infringing uses. Defendant Methode's indirect infringement has been willful since at least the first shipment of the Cyber Switching products.

22. Cyber Switching has suffered damages as the direct and proximate result of Defendant Methode's

infringement of the '870 Patent.

## Count Two

### Methode's Infringement of the '186 Patent

23. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained above.

24. By reason of some or all of the foregoing, Defendant Methode has directly infringed all claims of the '186 Patent. Defendant Methode's direct infringement has been willful since at least the first shipment of the Cyber Switching products.

25. By reason of some or all of the foregoing, Defendant Methode has indirectly infringed all claims of the '186 Patent by inducing infringement and contributing to infringement. Defendant had knowledge of the '186 Patent since at least the first shipment of Cyber Switching products and intended to induce infringement of the Patent in others.  One or more of Defendant's Products are nonstaple items and have no substantial non-infringing uses. Defendant Methode's indirect infringement has been willful since at least the first shipment of the Cyber Switching products.

26. Cyber Switching has suffered damages as the direct and proximate result of Defendant Methode's infringement of the '186 Patent.

## Count Three

### Methode's Infringement of the '104 Patent

27. Cyber Switching incorporates by reference as if fully set forth herein the allegations contained above.

28. By reason of some or all of the foregoing, Defendant Methode has directly infringed all claims of the '104 Patent. Defendant Methode's direct infringement has been willful since at least the first shipment of the Cyber Switching products.

29. By reason of some or all of the foregoing, Defendant Methode has indirectly infringed all claims of the '104 Patent by inducing infringement and contributing to infringement. Defendant had

1 knowledge of the '104 Patent since at least the first shipment of Cyber Switching products and intended to induce infringement of the Patent in others. One or more of Defendant's Products are nonstaple items and have no substantial non-infringing uses. Defendant Methode's indirect infringement has been willful since at least the first shipment of the Cyber Switching products.

30. Cyber Switching has suffered damages as the direct and proximate result of Defendant Methode's infringement of the '104 Patent.

WHEREFORE, Cyber Switching prays that this Court:

(1) Enter judgment in favor of Cyber Switching and against Defendant for infringement, including willful infringement as appropriate, of the '870 Patent, as set forth above.

(2) Enter judgment in favor of Cyber Switching and against Defendant for infringement, including willful infringement as appropriate, of the ''186 Patent, as set forth above.

(3) Enter judgment in favor of Cyber Switching and against Defendant for infringement, including willful infringement as appropriate, of the ''104 Patent, as set forth above.

(4) Award damages to Cyber Switching in an amount to be proven at trial for Defendant's infringement, pursuant to 35 U.S.C. §284.

(5) Declare this to be an exceptional case pursuant to 35 U.S.C. §285 and award Cyber Switching its attorney's fees in this action.

(6) Award the costs of this action to Cyber Switching.

(7) Try this case before a jury; and

(8) Allow Cyber Switching to have such other and further relief as the Court Deems just and proper.

Date: June 10, 2014       /s/ Kevin M. Pasquinelli, Esq.
Mount, Spelman & Fingerman, P.C.
Counsel for Plaintiff Cyber Switching